UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SECURITY BUILDING MIAMI, LLC,
INDIVIDUALLY AND AS ASSIGNEE OF
SECURITY BUILDING AR OWNERS,
LLC,

    Plaintiff,

v.

SOMPO AMERICA INSURANCE
COMPANY, a foreign corporation,

    Defendant.

_____/

Case No: 1-23-CV-22407-KMW

**SOMPO AMERICA INSURANCE COMPANY'S RESPONSE IN OPPOSITION/CROSS-MOTION FOR SUMMARY JUDGMENT TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Sompo America Insurance Company ("Sompo"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56(a) and the Local Rules of the Southern District, L.R. 7.1 and 56.1, hereby responds in opposition and files this Cross-Motion for Summary Judgment to plaintiff, Security Building Miami, LLC as assignee of Security Building AR Owners, LLC's ("Plaintiff") Motion for Partial Summary Judgment [D.E. 48].

As fully explained below, Plaintiff's Motion for Partial Summary Judgment [D.E. 48] should be denied in its entirety for two reasons. First, the undisputed material facts in this action establish that the subject property was vacant or unoccupied for a period of 60 consecutive days before the date of loss. As such, Plaintiff's alleged losses are precluded pursuant to the policy's vacancy exclusion. Second, the standard mortgage clause, upon which Plaintiff relies for coverage, is void because Plaintiff failed to provide notice to Sompo of the change in ownership and a change to a more hazardous occupancy of the subject property, which resulted in prejudice

to Sompo. Moreover, the standard mortgage clause does not create coverage for specified excluded causes of loss, like theft by an insured, under the policy. As such, Plaintiff's claims are still precluded under the standard mortgage clause of the policy. Accordingly, Plaintiff's motion should be denied. Additionally, Defendant's Cross-Motion for Summary Judgment should be granted as it is clear a vacancy existed at the Property for at least 60 days prior to the date of loss and the Policy's Standard Mortgage Clause is inapplicable to this loss and Plaintiff's claims. In support, Sompo states as follows:

I. **SUMMARY JUDGMENT STANDARD**

Fed. R. Civ. P. 56(a) provides in relevant part that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 97 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

"A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id*. at 26-27 (citing *Anderson*, 477 U.S. at 252).

Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

## II. ADDITIONAL POLICY PROVISIONS

Sompo issued a commercial property insurance policy to WeWork, Inc., WeWork Companies, Inc. ("WeWork"), and 117 N.E. 1st Ave. Tenant, LLC ("Tenant") (collectively, hereinafter the "Insureds") under policy number FTMS1097L0 (the "Policy"), which provided coverage to the insured property located at 117 N.E. 1st Ave., Miami, FL 33132 (the "Insured Premises"). *See* Pltf's Compl. [D.E. 1-1]. Relevant to this response, the Policy provides as follows:

> 11 **Perils not** This Company shall not be liable for loss by
> 12 **included** fire or other perils insured against in this
> 13 policy caused, directly, or indirectly, by:
> \* \* \*
> 24 (j) nor shall this Company be liable for loss by theft

*See* Policy, Standard Fire Endorsement SHPR 02 013 (12/2011).

\* \* \*

> STANDARD FIRE POLICY PROVISIONS ENDORSEMENT
> \* \* \*
> 28 Conditions suspending or restricting insurance. Unless other-
> 29 wise provided in writing added hereto this Company shall not
> 30 for loss occurring
> 31 (a) while the hazard is increased by any means within the con-
> 32 trol or knowledge of the insured; or
> 33 (b) while a described building, whether intended for occupancy
> 34 by owner or tenant, is vacant or unoccupied beyond a period of
> 35 sixty consecutive days;

*See* Policy, Standard Fire Endorsement, SHPR 02 013 (12/2011), P. 1-2 of 4.

\* \* \*

3

> B. This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.
>
> * * *
>
> 3) any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:
>
>> a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured;
>>
>> b) by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.
>
> This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. In no event does this Policy cover loss by theft by any individual specified in a or b above.

*See* Policy, Property Damage Form, P. 12 of 72.

* * *

> 3.     EXCLUSIONS
> In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:
> A. This Policy excludes:
> 1) indirect or remote loss or damage.
> 2) interruption of business, except to the extent provided by this Policy
> 3) loss of market or loss of use
> 4) loss or damage or deterioration arising from any delay.
> 5) mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss

*See* Policy, Property Damage Form, P. 12 of 72.

* * *
**GENERAL PROVISIONS**
* * *
LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

> A. The Company will pay for loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.
>
> B. The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:
>
>> 1) any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.
>> * * *
>> 3) change in the title or ownership of the property.
>> * * *
>>
>> The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within 10 days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.
>> * * *
>
> B. **The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment**.

*See* Policy, General Provisions Form, P. 61-62 of 72.

### III.    ARGUMENT

#### a.    The Insured Premises was Vacant.

In Sompo's view, there is no genuine issue of *material* fact as to whether Plaintiff's claims are precluded because the Policy clearly and unambiguously excludes physical loss or damage to property if the property is vacant for 60 consecutive days prior to the date of loss, which is the case here. Under Florida law, "interpretation of an insurance contract is a matter of law to be decided by the court." *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir.1985). Furthermore, courts must "construe an insurance contract in its entirety, striving to give

5

every provision meaning and effect." *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir.1993).

The Policy at issue does not define the term vacant. "When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015). *Merriam-Webster's Online Dictionary* defines vacant as "not occupied by an incumbent, possessor, or officer." "Vacant," *Merriam-Webster's Online Dictionary,* https://www.merriam-webster.com/dictionary/vacant (last visited on June 21, 2024). Notwithstanding, the Eleventh Circuit has interpreted the term vacant under a similarly worded vacancy exclusion to mean the "absence of amenities minimally necessary for human habitation." *See Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989). A property is also considered vacant if it is "empty or deprived of contents or without inanimate objects." *Id.* at 379.

In *Durrence*, the insured's house was destroyed by fire, set by unidentified arsonist. *Id*. at 378. At the time of the fire, no one was living at the property and the only personal property located inside the home was a refrigerator, stove, washing machine, and a small table. *Id.* Similar to the case at bar, the vacancy exclusion in *Durrence* provided that "[t]his peril does not include loss to property on the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." *Id.* at 379. After reviewing the affidavit of the insured, ***which contained several statements by the insured that the home was "vacant"***, and the insured's Answer and Counter-Claim that stated the same, the Eleventh Circuit held that the house was vacant for a period of 30 days prior to the date of loss and affirmed summary judgment in favor of the insurer. *Durrence*, 872 F.2d at 379. ("[t]here is little question but what the district court correctly determined there to be no genuine issue as to the fact that the house was vacant at

6

the time of the fire. The house lacked amenities minimally necessary for human habitation and thus would reasonably be considered "vacant."').

Here, the undisputed facts demonstrate that the Insured Premises was indeed vacant for 60 consecutive days before the May 15, 2021 date of loss. Like in *Durrence*, Plaintiff has made several affirmative statements supporting Sompo's contention that the Insured Premises was vacant. Specifically, Plaintiff advised the Eleventh Judicial Circuit in its Complaint for Possession of Real Property and Damages[1] that the Insured Premises was vacant for at least one year prior to the date of loss and that in April 2020, Tenant "abandoned the lease and vacated the premises." *See Security Building Miami, LLC v. 117 NE 1st Ave Tenant LLC*, Case No. 2021-015090-CA-01, ¶¶ 33 and 40, attached hereto as **Exhibit "A"**. Moreover, Plaintiff confirmed that **"[i]n or about April 2020, Tenant vacated and abandoned the Insured Premises, and that the [Insured Premises]** <u>**sat empty since that time**</u>." *Id.*

Additionally, on August 2, 2021, Plaintiff submitted its first notice of loss and informed Sompo that the Tenant "left the property" and, as a result, the Insured Premises was "secured and currently vacant." *See* Plaintiff's First Notice of Loss dated August 2, 2021, P. 1 of 2, attached hereto as **Exhibit "B"**. Plaintiff cannot now take a completely opposite position as to vacancy simply because it better suits their theory of recovery in this action. Thus, the Court should take Plaintiff's own statements at face value and find that the Insured Premises was vacant for more than 60 consecutive days prior to the loss, which precludes coverage.

---

[1] A District Court may take judicial notice of certain facts, including public records. *Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx 52, 53 (11th Cir. 2006). Further, "the court may take judicial notice of documents filed in other judicial proceedings ... for the limited purpose if recognizing the "judicial act" taken, or the subject matter of the litigation and issues decided (as opposed to adopting the findings of fact made therein.)" *Moore v. Potter*, No. 3:04-cv-1057-J-32HTS, 2006 WL 2092277 at *5 (M.D. Fla. Jul. 26, 2006) (internal citation omitted parenthesis in original).

If for some reason, the Court finds that Plaintiff's own admissions regarding the Insured Premises being vacant are insufficient, the affidavit of Andrew Brown – a representative of WeWork – further establishes that the Insured Premises was vacant for more than 60 days prior to the date of loss. In the commercial property context, Florida courts have found the vacancy exclusion to be enforceable where the property is devoid of business personal property. *See Sunrise Sports Cars, Inc. v. Britamco Underwriters, Inc.*, 782 So. 2d 1009, 1010 (Fla. 4th DCA 2001) ("[t]he car showroom was not built, was not in the actual process of being built, and had no business property on the premises.").

Here, as the undisputed facts show, on January 14, 2021, WeWork's property manager began "decommissioning the IT infrastructure", which included removal of essential hardware and wiping equipment including the access control system to the property. *See* Aff. of Andrew Brown, ¶¶ 8 and 9, attached hereto as **Exhibit "C"**. Notably, this work was completed in **February 2021** and would have rendered the Insured Premises vacant for more than 60 days prior to the date of loss because the Insured Premises' access equipment was disabled which prevented WeWork and its members from accessing and/or using the Insured Premises.

Plaintiff's Statement of Material Facts also demonstrate the Insured Premises was vacant at least 60 consecutive days before the date of loss. Specifically, on January 31, 2021 (three-and-a-half months before the date of loss), WeWork "**stopped operating the Property as a co-working center and told its members they needed to leave by that date**." *See* Pltf's Statement of Material Facts [D.E. 47], ¶ 6. In other words, not only was the Insured Premises empty and devoid of essential access equipment, but it was also abandoned by its tenants.[2] As such, these

---

[2] Plaintiff's own prior statements and the statements included in its Statement of Material Facts [D.E. 47] materially and substantively contradict its position on the vacancy exclusion. Specifically, the statement of Evan Leaphart – a tenant at the Insured Premises – confirms that tenants were asked to vacate the Insured Premises by **January 31, 2021**.

undisputed facts demonstrate that the Insured Premises was vacant as early as February 2021 because essential IT infrastructure and access equipment had been removed, as well as the business personal property contained therein. Likewise, the tenants had vacated the Insured Premises by this time. Consequently, this Court should find that the Insured Premises had been "emptied" and "deprived of many of its contents" several months before the date of loss, and the vacancy exclusion applies. *Durrence*, 872 F.2d at 379.

### b. The Insured Premises Was Unoccupied.

Even if the Insured Premises was not vacant for 60 consecutive days, which Sompo disputes, Plaintiff's claims are still precluded because the vacancy exclusion applies where the Insured Premises is *vacant* **or** *unoccupied*, a condition which by its essential terms requires one or the other to be met, but not both. As is the case with the term vacancy, the Policy does not define the term "occupancy." Accordingly, the undefined term, "should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." *Barcelona Hotel, LLC v. Nova Cas. Co.*, 57 So.3d 228, 230–31 (Fla. 3d DCA 2011); *Harrington v. Citizens Prop. Ins. Corp.*, 54 So.3d 999, 1001 (Fla. 4th DCA 2010); *State Farm Fla. Ins. Co. v. Campbell*, 998 So.2d 1151, 1153 (Fla. 5th DCA 2008); *Martinez v. Iturbe*, 823 So.2d 266, 267 (Fla. 3d DCA 2002). *Merriam-Webster's Online Dictionary* defines unoccupied as "not occupied: such as a: not busy…b: not lived in". "Unoccupied," *Merriam-Webster's Online Dictionary,* https://www.merriam-webster.com/dictionary/unoccupied (last visited on June 21, 2024).

---

*See* Pltf's Statement of Material Facts [D.E. 47-2], ¶ 3. ("On January 13, 2021, I was asked by WeWork building managers to move my business out of the building by the end of the month.").

Plaintiff would have this Court believe that the term occupancy should be narrowly read to mean "actual use by human beings." *See* Pltf's Motion for Partial Summary Judgment [D.E. 48], P. 4 of 13. However, occupancy does not necessarily require a "continuous bodily presence". *See Indep. Fire Ins. Co. v. Butler*, 362 So. 2d 980, 982 (Fla. 1st DCA 1978). Instead, when determining the occupancy status of a property, courts generally look to the parties' "intent" for the use of the insured premises, "the nature and character of the building, the purpose for which the building is designed, and the uses contemplated by the parties as expressed in the insurance contract." *Id.* at 982 citing 43 Am. Jur.2d Insurances 947-979, pages 896-99.

Here, there are several undisputed facts that demonstrate the Insured Premises was unoccupied for 60 consecutive days, if not more. For example, in **February 2021**, WeWork's property manager, JLL, placed a pad lock on the entrance door of the Insured Premises, which prevented anyone from entering or existing the Insured Premises. *See* **Exhibit "C"** at ¶ 10. JLL had possession of the only keys to said pad lock, and it did not access the Insured Premises after the pad lock was placed on the door. Similarly, WeWork was unaware of anyone entering or exiting the Insured Premises from February 2021 until May 15, 2021 – the date of loss. *See* **Exhibit "C"** at 10. These facts establish that the Insured Premises was secured and inaccessible by anyone including WeWork, the Insureds, WeWork's members, Plaintiff or the general public for at least **70 days**, if not more. As such, the Insured Premises was undoubtedly unoccupied for more than 60 consecutive days prior to the date of loss.

Plaintiff claims that the Insured Premises was occupied during several months prior to the date of loss.[3] But for the purpose of the Policy's 60-day vacancy exclusion, the Court need only

---

[3] Plaintiff's discovery responses demonstrate that Plaintiff is "singing another tune" to better its position in this litigation. For instance, Plaintiff claims several individuals and events occupied the Insured Premises from February 2021 through May 2021. *See* Pltf's Motion for Partial Summary Judgment [D.E. 48], P. 5 of 13. However, in Sompo's First Set of Interrogatories to Plaintiff, Eyal Peretz was specifically asked to "[i]dentify all Persons that were present

focus on the two months preceding the date of loss, *i.e.*, March and April 2021. During this two-month period, the only person that Plaintiff claims entered the Insured Premises was a city employed meter reader. *See* Pltf's Motion for Partial Summary Judgment [D.E. 48], P. 5 of 13. Not only is this statement self-serving, but it also lacks credibility because Plaintiff hasn't produced a scintilla of evidence to prove that a city employed meter reader accessed the Insured Premises on the dates and times alleged. Courts in this very jurisdiction have held that these types of retrospective, self-serving statement alone are inadequate to support the materiality element of a statement of fact. *Great Lakes Reinsurance (UK) PLC. v. Roca*, 0723322-CIV, 2009 WL 200252, at *6 (S.D. Fla. Jan. 27, 2009) ("[m]r. Usher's statements, without supporting evidence, is insufficient to find materiality as to Defendants' misrepresentation); *see also AXA Global Risks (UK) Ltd. v. Pierre,* No. 00–388–CIV, 2001 WL 1825853, *9 (S.D.Fla. Nov.8, 2001) *(citing Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985)).

Notwithstanding, the city employee's limited visits do not constitute "occupancy" for a multitude of reasons. First, a city employed meter reader is not an employee of Plaintiff, WeWork, or the Insureds, and should not be considered someone the parties intended to occupy the Insured Premises for its intended purpose on a regular basis. Second, according to Plaintiff, the meter reader accessed the Insured Premises for the sole purpose of going to the basement of the 17-story commercial building to read the utility meter, which took minutes if not seconds to complete. *See* Pltfs's Motion for Partial Summary Judgment [D.E. 48], P. 5 of 13. This in and of itself does not

---

at the Property from **March 15, 2021, to May 15, 2021**. Mr. Peretz responded by indicating that only a single individual, Reece Williams, occupied the Insured Premises during this 60 day period. *See* Plaintiff's Verified Answers and Objections to Defendant's First Set of Interrogatories to Plaintiff, ¶ 5. Mr. Peretz and Plaintiff have now changed their position in a last-ditch effort to challenge the applicability of the vacancy exclusion by claiming several people and events occupied the Insured Premises, which is simply not supported. This Court should not be swayed by Plaintiff's Statement of Material Fact as to the occupancy of the Insured Premises and instead hold Plaintiff to its prior statements and discovery responses that clearly demonstrate that the Insured Premises was unoccupied since February 2021.

11

support occupancy of the Property. Third, the meter reader did not access or use any of the Insured Premises' other equipment or amenities, to suggest that its visit aligned with the intended use[4] of the Insured Premises. Accordingly, the Insured Premises was unoccupied for a period of 60 consecutive days before the date of loss and Plaintiff's claims are therefore precluded.

Plaintiff also claims that the vacancy exclusion is inapplicable because the alleged loss or theft occurred *while* "people were in the building" and therefore the Insured Premises could not have been unoccupied. *See* Pltf's Motion for Partial Summary Judgment [D.E. 48], P. 7 of 13. This argument is meritless because the only way a loss or theft could have occurred is by a third party accessing and/or occupying the Insured Premises to effectuate the loss or theft. In other words, a loss or theft necessarily includes the presence of persons at the property to effectuate the loss. But, even if the Insured Premises was occupied for the limited purpose of the theft or loss, these acts were clearly not within the context of the intended uses of the Insured Premises and therefore do not constitute occupancy. Plaintiff's attempt to "throw everything at the wall" in hopes of finding coverage for the loss is unpersuasive and confusing, and this Court should simply ignore this meritless argument.

   c. **The Standard Mortgage Clause is Inapplicable.**

Finally, Plaintiff mistakenly believes that the Policy's vacancy exclusion does not apply to it – a lender/mortgagee – pursuant to the Policy's Lenders Loss Payee provision, *i.e.*, the Standard

---

[4] WeWork's constructed the Insured Premises to be a fully occupied, co-working commercial property for use by its hundreds of members, not a single city employee. The fact that WeWork spent millions of dollars renovating the Insured Premises (a 17-story, commercial building) including updated furniture, appliances, décor, and electronics, further suggest that WeWork and Sompo intended the Insured Premises to be fully occupied on a daily basis by WeWork's members. *See* Aff. of Andrew Brown, ¶6. Moreover, the Policy's Common Policy Declarations leaves no doubt that the Policy was issued for the sole purpose of insuring the property, which was intended to be used for "real estate" business transactions. It is for this reason that the named insured, WeWork, rented large spaces, made stylish and up to date renovations and licensed the use of communal and semi-private co-working spaces to sub-tenants. *See* Pltf's Statement of Material Facts [D.E. 47], ¶ 3.

Mortgage Clause. Specifically, Plaintiff claims that its lender and/or mortgagee status on the Insured Premises shields it from the enforceability of the vacancy exclusion. Notably, however, Plaintiff cites to **no Florida precedent that stands for this proposition**. This point notwithstanding, Plaintiff failed to consider the clause in its entirety, choosing instead to cherry pick the language that it felt supported its argument. Accordingly, when the provision is considered in its entirety, it becomes clear that Plaintiff failed to comply with multiple conditions under the Standard Mortgage Clause provision before the date of loss, which caused prejudiced to Sompo and forecloses the applicability of clause. Additionally, the Standard Mortgage Clause provision does not create coverage where the risk was never assumed under the Policy. Consequently, Plaintiff's interests in the loss under the Standard Mortgage Clause never materialized and its claims are still precluded.

### i. Plaintiff Failed to Provide Notice to Sompo Resulting in Prejudice

The Standard Mortgage Clause requires a lender or mortgagee (whichever may be the case) to comply with two distinct conditions before its interests can be perfected. The mortgagee must (1) notify Sompo of a change in ownership of the Insured Premises and (2) notify Sompo of a change to a more hazardous occupancy. *See* Policy General Provision Form, P. 61-62 of 72. Florida courts have interpreted similar standard mortgage clause language to be plain and unambiguous. *See Indep. Fire Ins. Co. v. NCNB Nat. Bank of Florida*, 517 So. 2d 59, 64 (Fla. 1st DCA 1987). The reason for these conditions is to "afford [an insurer] the opportunity to determine whether an additional premium is due and payable to continue coverage in force because the reported changes are not permitted under the original policy, or the coverage should be canceled outright because the change in use or occupancy exceeds an acceptable risk." *Id.*

Sompo acknowledges that the notice requirement is not a condition precedent to the creation of coverage or Plaintiff's right to recover on a claim for a loss falling with the terms of the clause. *NCNB*, 517 So. 2d at 64. However, a lender is precluded from recovering any insurance benefits under the standard mortgage clause upon a showing that (1) a described "change" or "increase in hazard" falling within the meaning of the policy has occurred; (2) that such change or increase was so substantial that the risk insured by the insurer materially increased; (3) that such change occurred after the effective date of the insurance; and (4) that the mortgagee's violation of the notice requirement caused the insurer's failure to cancel the policy or demand an additional premium. *See Smith v. Peninsular Insurance Co.*, 181 So.2d 212 (Fla. 1st DCA 1966). Stated differently, inadequate notice to Sompo precludes coverage under the Standard Mortgage Clause if Sompo can demonstrate that it was prejudiced by Plaintiff's failure to provide notice of the change in ownership and the change to a more hazardous condition of the Insured Premises before the loss.

The undisputed facts of this action clearly establish that Sompo was prejudiced by Plaintiff's failure to provide notice of the change in ownership and change to a more hazardous occupancy at the Insured Premises. *See* Aff. of Alice Hu Wissing attached hereto as **Exhibit "D"**. As stated above, the change in ownership occurred on March 18, 2021, more than four months **after** the Policy went into effect. The change in ownership and hazardous condition also posed an increased risk to Sompo that was not contemplated when the Policy incepted because the changes made the Insured Premises more susceptible to theft, water damages, vandalism, and interior damage. All of these risks would have, and allegedly did, go unnoticed for several months because the Insured Premises was unoccupied. This change or hazard was also a substantial change because it posed greater risk and liability to Sompo for property damage that could have and would

14

have been prevented or easily detected had the Insured Premises been occupied. Finally, had Plaintiff provided Sompo with notice of the change in ownership or hazard in March 2021 or even May 15, 2021, when Plaintiff knew there was a mass exodus by the Insureds, Sompo could have reassessed the risk and/or assessed additional premiums[5] or cancelled the Policy, whichever it deemed appropriate at that time.

Sompo was not given any of these opportunities in clear contravention to the plain and unambiguous obligations of Plaintiff under the Standard Mortgage Clause. Moreover, Plaintiff's failure to comply with these conditions caused substantial prejudice to Sompo. Accordingly, Plaintiff's claims under the Standard Mortgage Clause are precluded.

### ii. **Theft By Insured is Not a Covered Loss**

Plaintiff's claims regarding the theft of business personal property by the Insureds is also precluded because the Policy never assumed that risk. At its most basic level, the Standard Mortgage Clause protects the lender or mortgagee's interests when the property owner's act or failure to comply violates a policy obligation or prohibition. *See Bank of Cashton v. La Crosse Cnty. Scandinavian Town Mut. Ins. Co.*, 216 Wis. 513, 257 N.W. 451 (1934). Thus, rather than creating coverage for an excluded risk in the first instance, "the standard mortgage holder's clause operates to maintain coverage for the mortgage holder when the property owner's acts violate a duty or obligation associated with the insurance contact resulting in a violation or invalidation of the policy." *Id.*

Here, Plaintiff claims the Insureds, and only the Insureds, stole and/or removed several millions of dollars' worth of appliances, future, electronics, and other business personal property from the Insured Premises. *See* Pltf's Statement of Material Facts, ¶ 17. However, the Policy

---

[5] *See* **Exhibit "D"** at ¶ 13.

specifically excludes coverage for loss that result from "any dishonest act, including but not limited to theft, by an insured." *See* Policy Property Damage Form, P. 12 of 71.  Therefore, the Policy never insured against direct physical loss or damage as a result of theft by an insured.  More to the point, the Standard Mortgage Clause does not create separate coverage for this type of loss.  Accordingly, Plaintiff's claims that it is entitled to coverage for this stolen and/or removed property pursuant to the Standard Mortgage Clause fails.   Like the Insured, Plaintiff's theft claim is precluded because the theft was an act of the Insureds.

Plaintiff further alleges that the theft was not a theft because the property belonged to WeWork and one cannot steal its own property. Regardless, theft, removal, or "mysterious disappearance" of the business personal property were acts of the Insureds and therefore are all excluded causes of loss under the Policy. *See* Policy Property Damage Form, P. 12 of 71.

**IV.   Conclusion**

Plaintiff's Motion for Partial Summary Judgment [D.E. 48] should be denied and Defendant's Cross Motion for Summary Judgment should be granted because the undisputed, material facts establish that the Insured Premises was vacant or unoccupied for more than 60 consecutive days before the date of loss.  Moreover, Plaintiff's claim that it's still entitled to coverage pursuant to the Policy's Standard Mortgage Clause notwithstanding the vacancy exclusion fails because Plaintiff failed to provide Sompo with notice of the change in ownership and of a more hazardous occupancy of the Insured Premises, which prejudiced Sompo.  Further, the Standard Mortgage Clause does not act to create coverage that is specifically excluded under the Policy, such as theft by an insured.  As such, Plaintiff's Motion for Partial Summary Judgment should be denied.

**WHEREFORE**, Defendant, Sompo America Insurance Company, respectfully requests that the Court enter an order denying Plaintiff's Motion for Partial Summary Judgment [D.E. 48] in all respects.  Additionally, Sompo America Insurance Company respectfully requests that this Court grant its Cross Motion for Summary Judgment in favor of Sompo because the Insured Premises was vacant or unoccupied for period of 60 consecutive days before the loss and the Policy's Standard Mortgage Clause is inapplicable to this loss and Plaintiff's claims.  Sompo further requests that this Court award all costs and disbursements incurred by Sompo in this action, and grant any other such relief as the Court deems just and proper.

Dated:  June 24, 2024

    Respectfully submitted,

    ZELLE LLP

    By:  s/ Christine M. Renella
          Christine M. Renella, Esq.
          FL Bar No. 025823
          Jacarri M. Walker, Esq.
          FL Bar No. 1010474
          110 E. Broward Blvd., Suite 2000
          Ft. Lauderdale, FL 33301
          Tel.: (786) 693-2351
          Fax: (612) 336-9100
          *Counsel for Defendant,*
          *Sompo America Insurance Company*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

SECURITY BUILDING MIAMI, LLC,
INDIVIDUALLY AND AS ASSIGNEE OF
SECURITY BUILDING AR OWNERS,
LLC,

    Plaintiff,

v.

Case No: 1-23-CV-22407-KMW

SOMPO AMERICA INSURANCE
COMPANY, a foreign corporation,

    Defendant.

_____/

## CERTIFICATE OF SERVICE

    I hereby certify that on June 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Christine M. Renella
Christine M. Renella, Esq.
FL Bar No. 025823
Jacarri M. Walker, Esq.
FL Bar No. 1010474
110 E. Broward Blvd., Suite 2000
Ft. Lauderdale, FL 33301
Tel.: (786) 693-2351
Fax: (612) 336-9100
*Counsel for Defendant,*
*Sompo America Insurance Company*

## SERVICE LIST

**Security Building Miami, LLC v. Sompo America Ins. Co.**

**Case No. 1:23-cv-22407-KMW**

**United States District Court, Southern District of Florida**

Michael D. Kaplan
Kaplan Law Group, P.A.
6041 Johnson Street
Hollywood, FL 33024
E-mail: mkaplan@thekaplanlawgroup.com

Marc Ben-Ezra
The Professional Law Group
4600 Sheridan Street, Suite 303
Hollywood, FL 33021
E-mail: mben-ezra@theprolawgroup.com
*Attorneys for Plaintiff,*
*Security Building Miami, LLC*

4883-9901-2555v1