UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-CV-22407-WILLIAMS/REID

SECURITY BUILDING MIAMI,
LLC,

      Plaintiff,

vs.

SOMPO AMERICA INSURANCE. CO.,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

      Two motions are currently pending before this Court: (1) a Motion for Partial Summary Judgment filed by Security Building Miami, LLC's ("Plaintiff" or "SBM") [ECF No. 48] and Statement of Material Facts in Support [ECF No. 47]; and a Cross-Motion for Summary Judgment filed by Sompo America Insurance Company ("Sompo Insurance") [ECF No. 54] and Statement of Material Facts in Support [ECF No. 55].

      The Honorable Kathleen M. Williams referred this matter for a Report and Recommendation under 28 U.S.C. § 636. [ECF No. 53]. For the reasons stated below, the Undersigned respectfully **RECOMMENDS** that SBM's Motion for Partial Summary Judgment [ECF No. 48] be **DENIED** and Sompo's Cross-Motion for Summary Judgment [ECF No. 54] be **GRANTED**.

# I.   **BACKGROUND**

## A.  **Procedural Background**

This is a first-party breach of contract action brought by Plaintiff, the owner of a historic building called The Security Building in downtown Miami, Florida. Plaintiff SBM alleges in its Complaint that on or about May 15, 2021, the business' personal property, and tenant improvements and betterments suffered a loss caused by covered peril or perils, and consequently, the business suffered a loss of income. [ECF No. 1 ¶19; ECF No. 54-2 at 2–3]. Plaintiff alleges that its insurance policy with Defendant Sompo Insurance establishes a valid written contract between the Parties that covers the loss. [*Id.* ¶ 34]. Plaintiff claims Defendant violated the terms of the policy by failing to cover its losses. [*Id.* ¶ 38].

## B.  **The Undisputed Facts**[1]

The Undersigned finds that the following facts are undisputed. In 2015, SBM AR Owner ("SBAR"), the former owner of The Security Building, leased the property under a fifteen-year lease agreement to a subsidiary of WeWork, Inc., named "117 NE 1st Ave Tenant LLC." (collectively "WeWork") [ECF No. 1 ¶ 12–13; ECF No. 1-4; ECF No. 47 ¶ 3; 55 ¶ 3]. Five years later, Defendant Sompo Insurance issued a commercial property insurance policy to WeWork effective November 1, 2020, to November 1, 2021. [ECF No. 1 ¶ 12; ECF No. 1-1]. The policy listed SBAR as an additional named insured. [ECF No. 47 ¶ 15].

WeWork stopped paying SBAR rent in April 2020, and SBAR defaulted on its mortgage shortly after the WeWork crash. [ECF Nos. 47 ¶ 7; 55 ¶ 7]. SBM purchased the mortgage on March

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions. Federal Rule of Civil Procedure 56 requires a Court ruling on summary judgment to hold the facts in a light most favorable to the non-moving party.

18, 2021, and took title through a deed in lieu of foreclosure on June 11, 2021. [ECF Nos. 47 ¶ 7;

55 ¶ 7]. This type of deed included "non-merger language," stating:

> It is not intended … to operate to effectuate any merger of the fee simple interest
> of Grantee in and to the Property with the still outstanding mortgage lien and
> security agreement on the Property … such rights … as set forth in the Mortgage
> shall survive the execution and delivery of this Deed and shall remain outstanding.
>
> …
>
> THIS CONVEYANCE IS EXPRESSLY MADE SUBJECT to the liens of the Loan
> Documents and other permitted encumbrances and such liens and encumbrances
> shall remain in full force and effect notwithstanding this conveyance.

[ECF Nos. 47 ¶ 7] (quoting [ECF No. 1-3 ¶ 4]); [55 ¶ 7]

SBAR and SBM also entered into an Assignment and Assumption of Lease Agreement

that transferred to SBM Miami, LLC:

> [A]ny and all existing rights and claims Assignor [SBAR] currently holds or may
> hold against the Tenant and its guarantor under the Lease arising out of any and all
> liabilities, obligations, claims, costs and expenses whatsoever arising under or on
> account of the Lease prior to the Effective Date.

[ECF Nos. 47 ¶ 8; 55 ¶ 8].

Plaintiff explains that this assignment gave it "two distinct and independent interests in the

Property": owner and mortgagee. [ECF Nos. 47 ¶ 9; 55 ¶ 9]. Therefore, it "obtained all the rights

of the landlord/owner and of the mortgagee under the lease, mortgage, the policy, and the law."

[ECF Nos. 47 ¶ 9] (internal citation omitted). WeWork members and representatives began moving

out of the property in May 2021 and hired additional movers to "remove additional business

personal property, including furniture from the Property." [ECF No. 55 ¶ 29]. The last time any

WeWork representative visited the property was May 28, 2021. [*Id.* ¶ 31].

Two weeks after SBM took title to the property, on June 25, 2021, SBM filed its

"Complaint for Possession of Real Property and damages against WeWork and Tenant in the

Eleventh Circuit in . . . Miami-Dade County." [ECF Nos. 55 ¶ 32; 70 ¶ 32]. SBM submitted a claim, seeking coverage under the policy from the loss. [ECF Nos. 47 ¶ 20; 55 ¶ 20]. On August 2, 2021, Plaintiff submitted its "First Notice of Loss" to Sompo for damages allegedly sustained to the property. [ECF No. 55 ¶ 35; 70 ¶ 35]. There, SBM "informed Sompo of a 'change in ownership and occupancy,' and SBM confirmed that the Property was secured and vacant." [ECF No. 55 ¶¶ 36–37; 70 ¶¶ 36–37].

Sompo assigned SBM a claim number and assigned an outsider adjusting firm to formulate the claim. [ECF Nos. 47 ¶ 21; 55 ¶ 21]. An outside adjusting firm sent "several new adjusters, inspectors, and Sompo's attorneys to conduct additional inspection of the Property" seven months after SBM filed its claim. [ECF Nos. 47 ¶ 23; 55 ¶ 23].

Both parties agree that the date of the loss was May 15, 2021. [ECF No. 47 ¶ 15; ECF No. 55 ¶ 15].

## II.     <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a) requires that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Fonseca v. Wal-Mart Stores, E., LP*, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. 2019) (quoting *Anderson*, 477 U.S. at 248).

The movant must support its assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court . . . may: . . . consider the fact undisputed for purposes of the motion." *Acheron Portfolio Tr. v. Mukamal as Tr. of Mut. Benefits Keep Policy Tr.*, No. 18-CV-25099, 2021 WL 7368630, at *2 (S.D. Fla. Sept. 24, 2021) (citing Fed. R. Civ. P. 56(e), *report and recommendation adopted*, No. 18-25099-CIV, 2022 WL 354241 (S.D. Fla. Feb. 7, 2022), *aff'd*, No. 22-10748, 2022 WL 17420869 (11th Cir. Dec. 6, 2022)).

When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the nonmoving party." *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 729 (11th Cir. 2015). Courts "resolve factual controversies in favor of the nonmoving party [ ] only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis in original).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion." *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Torres*, 244 F. Supp. 3d at 1327 (internal quotation marks and citation omitted). "[A] court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* at 1327–28.

### III.   DISCUSSION

SBM moves for Partial Summary Judgment for three central reasons. First, it contends that Sompo is liable for the losses because it is undisputed that the vacant/unoccupied exclusionary provision does not apply. [ECF No. 48 at 3]. Second, the vacant and unoccupied exclusion does not apply because the Claimant/Plaintiff is a lender. [*Id.* at 7]. And third, the theft exclusionary provision applies. [*Id.* at 12].

Conversely, Sompo moves for summary judgment because, first, it is undisputed that the property was vacant or unoccupied for sixty consecutive days before the date of loss. [ECF No. 54 at 1–2]. Secondly, the standard mortgage clause is void because Plaintiff failed to provide notice to Sompo of the change in ownership and a change to a more hazardous occupancy of the property. [*Id.*].

 The undersigned will address each claim in order.

**A.  SBM's Motion for Partial Summary Judgment**

SBM argues summary judgment in its favor is warranted. Sompo denied the insurance claim after concluding that the insured premises was vacant or unoccupied for a period of sixty consecutive days prior to the date of the loss and because its investigation showed that several items of business property had been stolen. [ECF No. 55 ¶ 24]. First, SBM contends there is no genuine issue of material fact regarding whether the property was vacant or unoccupied and because the policy contained a New York Standard Mortgage Clause providing that the policy would not be invalidated by a change to a more hazardous occupancy. Also, the vacant or unoccupied clause does not apply here because Sompo knew or should have known that the building would become unoccupied. Regarding the theft clause, SBM maintains the theft exclusion

does not apply because the loss was not caused by theft and cannot apply in light of the New York

Standard Mortgage Clause.

>        (i)        *The Terms of the Policy.*

Sompo issued a commercial property insurance policy to WeWork, which protected the

117 N.E. 1st Ave., Miami, FL 33132 property. [ECF No. 54 at 3] (internal citation omitted). The

relevant parts of the Policy state:

> Perils not included: This Company shall **not be liable for loss by included** fire or
> **other perils insured against in this policy caused, directly, or indirectly**, by:
> * * *
> 24(j) **nor shall this Company be liable for loss by theft**.
> STANDARD FIRE POLICY PROVISIONS ENDORSEMENT
> * * *
> **Conditions suspending or restricting insurance. Unless otherwise provided in
> writing added hereto this Company shall not be liable for loss occurring:**
> while the **<u>hazard is increased by any means within the control or knowledge of
> the insured; or while a described building, whether intended for occupancy by
> owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive
> days</u>**;
>
> This Policy excludes loss or damage directly or indirectly caused by or resulting
> from any of the following regardless of any other cause or event, whether or not
> insured under this Policy, contributing concurrently or in any other sequence to the
> loss.
> * * *
> any **dishonest act, including but not limited to theft, committed alone or in
> collusion with others**, at any time:
> a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of
> an Insured;
> b) by any proprietor, partner, director, trustee, or officer of any business or entity
> (other than a common carrier) engaged by an Insured to do anything in connection
> with property insured under this Policy.
> This Policy does insure acts of direct insured physical damage intentionally caused
> by an employee of an Insured or any individual specified in b above, and done
> without the knowledge of the Insured. In no event does this Policy cover loss by
> theft by any individual specified in a or b above.
> EXCLUSIONS
> In addition to the exclusions elsewhere in this Policy, the following exclusions
> apply unless otherwise stated:
> A. This Policy excludes:
> 1) indirect or remote loss or damage.

2) interruption of business, except to the extent provided by this Policy
3) loss of market or loss of use
4) loss or damage or deterioration arising from any delay.
5) mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

* * *

GENERAL PROVISIONS

* * *

LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATION

The Company will pay for loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.

The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

1) any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

* * *

3) change in the title or ownership of the property.

* * *

**The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within 10 days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.**

* * *

B. The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee **written notice 60 days prior to the effective date of cancellation**, if cancellation is for any reason other than non-payment.

[ECF No. 1-1 at 11–93] (emphasis added).

      (ii)    *The Vacant or Unoccupied Clause.*

SBM argues that "vacant" means property "devoid of every item of furniture and furnishings." *See* [ECF No. 48 at 3] (citing *Hehemann v. Michigan Millers Mut. Ins. Co.*, 240 So. 2d 851, 854 (Fla. 4th DCA 1970)). In other words, "vacant" correlates with a lack of "inanimate objects." [ECF No. 48 at 3] (citing *Hehemann*, 240 So. 2d at 854). SBM argues that the property

could not have been "vacant" before the May 15, 2021, date of loss since the property had "thousands of pieces of furniture and appliance and other inanimate objects" inside. [ECF No. 48 at 3]. Also, SBM contends under the plain meaning of the terms the "Property could not have been vacant or unoccupied at the time of the loss because human activity in the Property was itself the cause of the loss." [*Id.* at 7] (citing *Geico Gen. Ins. Co. v. Virtual Imaging Servs.*, 141 So. 3d 147, 157 (Fla. 2013)) (internal citation omitted). Relatedly, it also argues that it would be an impossibility for a loss to occur when the building was vacant or unoccupied since "human activity in the Property was itself the cause of the loss." [ECF No. 48 at 7].

SBM admits that January 31, 2021, was the last day WeWork used the property. [ECF No. 48 at 4]. Evan Leaphart, a WeWork member, was told to move his business out of the property by the end of February. [ECF No. 47-2 ¶ 3]. After that, according to SBM, in February the property was used by Telemundo for two events, one in March 2021. [ECF No. 48 at 4-5]. A city meter reader also made monthly visits to the property to read the water meter located in the basement up until May 2021. [ECF No. 48 at 4-5]. Finally, on May 15, 2021, WeWork removed its furnishings from the property. *Id.*

Although Sompo concedes that the policy left vacant or unoccupied undefined, the "plain and ordinary meaning" of 'vacant' means 'not occupied by an incumbent, possessor, or officer.'" [ECF No. 54 at 6] (first citing *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015); then quoting *Vacant*, *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/vacant (last visited on Aug. 16, 2024)). Sompo also noted the plain meaning of unoccupied is "not busy . . . not lived in." *Unoccupied*, *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/unoccupied (last visited on June 21, 2024).

Sompo also cites to Eleventh Circuit caselaw that interpreted the word vacant "under a similarly worded vacancy exclusion to mean the 'absence of amenities minimally necessary for human habitation.'" [ECF No. 54 at 6] (quoting *Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989)). Vacancy is closely defined as property "empty or deprived of contents or without inanimate objects." *Durrence*, 872 F.2d at 379.

"Summary judgment is appropriate in a contract dispute where the contract is clear and unambiguous on its face." *Panama Music, Corp. v. Universal Music Grp. Inc.*, No. 12-20200-CIV, 2013 WL 12310734, at *6 (S.D. Fla. July 9, 2013). "Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." *Id.* (internal quotation marks and citation omitted). Under Florida law "the elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Alhassid v. Bank of Am.*, N.A., No. 14-CIV-20484, 2015 WL 11216721, at *4 (S.D. Fla. Sept. 14, 2015) (internal quotation marks omitted) (citing *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003)).

Further, "[t]o constitute a vital or material breach, a defendant's non-performance must be such as to go to the essence of the contract." *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019) (quoting *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. 4th DCA 2003)). A court must construe the "contract in its entirety, striving to give every provision meaning and effect." *See Dahl–Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993) (citing *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla. 1979)). Of course, a "court cannot rewrite an insurance contract to extend coverage beyond what is clearly set forth in the contractual language." *Szczeklik v. Markel Int'l Ins. Co., Ltd.*, 942 F.Supp.2d 1254, 1260 (M.D. Fla. 2013) (quoting *Fla. Residential Prop. & Cas. Joint*

*Underwriting Ass'n v. Kron*, 721 So.2d 825, 826 (Fla. 3d DCA 1998)). A district court does, however, have power to "interpretat[e] . . . an insurance contract [as] a matter of law." *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985).

"Striving to give every provision meaning and effect," the Court will first follow the simple, clear definition of "vacant" that *Black's Law Dictionary* provides. *See Dahl–Eimers*, 986 F.2d at 1382 (citing *Excelsior Ins. Co.*, 369 So.2d at 941. Vacant, as an adjective and in the insurance context, means "empty; *unoccupied.*" *Vacant*, *Black's Law Dictionary* (10th ed. 2014) (emphasis added). As a noun, vacant is "[t]he quality, state, or condition of being *unoccupied*, esp. in reference to an office . . . ." *Id.* (emphasis added). *Black's Law Dictionary* adds that courts sometimes distinguish vacant from unoccupied, where the former means "completely empty" while the latter can mean "not routinely characterized by the presence of human beings." *Id.*

Applying the definition here, "vacant" and "unoccupied" are one and the same. So, the question remains whether there is a genuine dispute if the property was vacant or unoccupied for sixty consecutive days before the May 15, 2021, date of loss. The Court believes there is none. *See Sec. Bldg. Miami, LLC v. Sompo Am. Ins. Co.*, No. 1-23-CV-22407, 2024 WL 712455, at *4 (S.D. Fla. Feb. 2, 2024), *report and recommendation adopted*, 23-22407-CV, 2024 WL 707237 (S.D. Fla. Feb. 20, 2024) (finding in Sompo's Motion to Dismiss that the Notice of Loss stated that the "property is secured and is currently vacant," but that language does not unambiguously reveal that the property was "vacant or unoccupied beyond a period of sixty consecutive days.").

Based upon the plain meaning of the terms, the undersigned concludes that the undisputed facts show that the property *was* vacant or unoccupied for sixty consecutive days before May 15, 2021. First, in the state court action against WeWork, SBM stated that WeWork "abandoned the lease and vacated the premises" in April 2020, a year before the May 15, 2021, date of loss, where

11

the property "sat empty." [*Id.*] (citing *Security Building Miami, LLC v. 117 NE 11st Ave Tenant LLC*, No. 2021-015090-CA-01 ¶¶ 33, 40[2]). Importantly, it is undisputed that on January 31, 2021, over three months before the date of the loss, WeWork stopped operating as a co-working center and told its members to leave by that date. [ECF No. 47 ¶ 6]. At the beginning of 2021, Andrew Brown, WeWork's property manager, explained that he started "decommissioning the IT infrastructure"—removing essential hardware, wiring, and the access control system. [*Id.*] (citing [ECF No. 54-3 ¶¶ 8–9]). According to Brown's affidavit, the team finished this process in February 2021, leaving the property vacant for over sixty days before the May 15, 2021, date of loss. [ECF No. 54 at 8]. After January 31, at best, SBM has noted only intermittent occupancy, not continuous occupancy, which clearly changed the use of the building.

It is undisputed that in or around April 2020, WeWork relinquished control of the Property. *Security Building Miami, LLC*, No. 2021-015090-CA-01 ¶ 33. On June 22, 2022, Sompo issued its denial of coverage letter. [ECF No. 47-4]. It noted the date of loss as May 15, 2021. [*Id.* at 1].

> On **August 2, 2021**, SBAR/SBM provided Notice of Loss to Sompo with a date of loss on or about **May 15, 2021,** claiming, 'real property' damage including 'related water and mold damages,' 'personal property,' 'loss of gross profit,' and 'possible other damages.' McLarens was assigned as the independent adjuster to investigate the claim on behalf of Sompo. McLarens first inspected the Property in October.

[*Id.* at 3] (emphasis added).

Sompo contends that the property was vacant as early as January 2021 as it was "stripped of most of the . . . personal property and was no longer being used for its intended purposes." [ECF No. 77 at 2]. Andrew Brown, WeWork's technological senior manager, stated in his affidavit that "on or about January 14, 2021, WeWork notified JLL, WeWork's property manager, of the impending closure of the Property and began removing property from the premises." [ECF No.

---

[2] WeWork and SBM settled this action. WeWork agreed to pay $5,556,740 while SBM dismissed the complaint with prejudice. [ECF No. 47-4 at 3].

55-6 ¶ 8]. Brown witnessed the "decommissioning" of the information technology infrastructure, removal of essential hardware, and "wiping of non-essential equipment including [the] access control system." [*Id.* ¶ 9].

By February—though Plaintiff disputes this point—property manager JLL placed a padlock on the entrance. [ECF No. 55-6 ¶ 10]. WeWork then hired Dataknox Solutions, Inc. in May 2021 to "complete the final stage of decommissioning the IT infrastructure by removing all remaining equipment including . . . cameras, speakers, and keycard readers. All of the equipment was cut at the wire where appropriate to allow for reinstallation by the property owner or the next tenant." [*Id.* ¶ 12]. In Sompo's First Set of Interrogatories to Plaintiff's president, Eyal Peretz, was asked to "[i]dentify all Persons that were present at the Property from March 15, 2021, to May 15, 2021." [ECF No. 54 at 10–11 n.3]. Peretz answered "that only a single individual, Reece Williams, occupied the Insured Premises during this 60-day period." [ECF No. 54 at 10–11 n.3] (internal citation omitted).

SBM cites two facts to establish that the property was not vacant. First, there was a Telemundo party on the property on February 4 and 12, 2021, and again in March. [ECF No. 48 at 4]. SBM provides an apparent City of Miami Police Department report, where unnamed officers worked "extra duty detail" on February 4, 2021, at 7:14 a.m. for "Telemundo Production until 2000HRS." [ECF No 48-2 at 3]. SBM's manager stated in his affidavit that "between March 3, 2021, and March 18, 2021, I . . . was prevented from entering the Property by a security guard who advised that an event was taking place within the Building. I could see a bunch of people moving around inside . . . ." [ECF No. 70-1 ¶ 3]. He continues, "I had a clear view of the doors to the front entrance of the Building. None of the doors had a padlock." [*Id.* ¶ 4].

These facts SBM supplies to prove the property was not vacant are wholly insufficient to prove no genuine issue of material fact. First, Telemundo holding an event, SBM's manager stating he could see a "bunch of people moving around inside" while he was outside the property, and a threadbare police report that unnamed officers worked "extra duty detail" for "Telemundo Production" all lack even a "mere scintilla of evidence in support" of SBM's position. *See Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson*, 477 U.S. at 249–50). Second, even if SBM could establish that Telemundo had a gathering inside the property in February 2021, it would nonetheless "fall outside of the Policy's vacancy or unoccupied exclusion 60-day window" since Telemundo is not a policyholder. [ECF No. 77 at 5].

Indeed, the policy states that "[u]nless otherwise provided in writing added hereto this Company should not be liable for loss occurring . . . while a described building, whether intended for occupancy *by owner or tenant*, is vacant or unoccupied beyond a period of sixty consecutive days." [ECF No. 1-1 at 12] (emphasis added). Therefore, a third-party gathering is disconnected from the policy's "intended use" and outside any activity Sompo anticipated when drafting its policy. [ECF No. 77 at 5].

This overlaps with SBM's equally unavailing fact of Miami-Dade County Water and Sewer employees checking the property's meter. It lists four instances in 2021 where a meter reader entered the property's basement to take a quick, handheld reading of the fire line and water meter. [ECF No. 48-1 at 1–15]. This, too, is insufficient. *See JJD Associates of Palm Beach, Ltd. v. Am. Empire Surplus Lines Ins. Co.*, No. 11-80247-CV, 2011 WL 5873061, at *3 (S.D. Fla. Nov. 22, 2011) ("informal use of the vacant premises to store tools and sporadic entry by the agent for the center and maintenance personnel are not the 'customary' operations contemplated by the

policy."); *see also Langill v. Vermon Mut. Ins. Co.*, 268 F.3d 46, 48 (1st Cir. 2001) ("random evening visits hardly provide the appearance of somebody being at home . . . ."). There is no evidence provided that the meter reader used any of the property's amenities to take the reading or that the city meter reader was an employee of WeWork or SBM. [ECF No. 54 at 12].

Thus, there is no genuine dispute of material fact regarding whether the property was continuously vacant or unoccupied for 60 consecutive days prior to the date of the loss. *See* Fed. R. Civ. P. 56(a). Unfortunately, for SBM, the undisputed facts establish that it was.

(iii)    *SBM did not adhere to the Standard Mortgage Clause provisions.*

Next, SBM contends that even if the Court were to find that the vacant/unoccupied clause applies, SBM could nonetheless prevail as a mortgagee under the policy's Lenders Loss Payee provision, i.e., the Standard Mortgage Clause. [ECF No. 48 at 7]. SBM argues that under the clause "[i]ts interest cannot be affected by the unoccupied exclusion that pertains to a more hazardous occupancy status." [*Id.*].

a. SBM did not adhere to the Standard Mortgage Clause provision, requiring timely notice of change in occupancy.

First, SBM argues that it is a "lender" protected under the policy, even when there is a change to a more hazardous occupancy. [ECF No. 48 at 7]. The New York Standard Mortgage Clause reads, in part, that "[t]he interest of the . . . Mortgagee . . . in the property insured under this Policy will not be invalidated by: change to a more hazardous occupancy." [ECF No. 1-1 at 93]. While SBM concedes that properties are more hazardous when vacant or unoccupied, it claims that it is a mortgagee whose interest cannot be affected. [*Id.*].

Sompo argues that SBM fails to cite any caselaw from this Court or Florida that supports its proposition. [ECF No. 54 at 13]. Moreover, Sompo accuses SBM of "cherry picking" relevant portion of the Standard Mortgage Clause, when, in fact, "Plaintiff failed to comply with multiple

15

conditions under the Standard Mortgage Clause provision before the date of loss, which caused prejudiced to Sompo and forecloses the applicability of clause." [*Id.*].

Sompo spotlights a fatal fact: SBM's failure to timely notify Sompo of either the change in ownership (SBM acquiring the mortgage from SBAR) or the actual theft that occurred, which is the more hazardous condition.  *See* [*id.* at 13].

The mortgage's language is certainly clear:

> The *Lender or Mortgagee* will *notify* the Company of any *known change in ownership, occupancy, or hazard and, within 10 days of written request by the Company*, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.
>
> * * *
>
> B. The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee **written notice 60 days prior to the effective date of cancellation**, if cancellation is for any reason other than non-payment.

[ECF No. 1-1 at 99] (emphasis added).

SBM simply did not adhere to this provision. "In assessing a written agreement, the parties' intent 'is derived from the objective meaning of the words . . . .'" *Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, 364 F. Supp. 3d 1354, 1359 (S.D. Fla. 2018) (quoting *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014)). First, the mortgage is clear that SBM must notify Sompo of any known change in ownership, occupancy, or hazard within ten days. Alice Hu, Sompo's Chief Operating Officer, attested in her affidavit that "there are no other documents notifying Sompo of a change in the Property's occupancy or hazard until August 2, 2021" — in other words, after the May 15, 2021, date of loss. [ECF No. 54-4 ¶ 7]. Once SBM did notify Sompo, it stated that the property was now vacant. [*Id.* ¶ 8].

16

Second, it is not too far of a leap to conclude that leaving a property vacant would lead to a more hazardous condition. Third, the Court agrees with Sompo that all SBM needed to do "when [it] knew there was a mass exodus by the Insureds," was notify Sompo so "Sompo could have reassessed the risk and/or assessed additional premiums or canceled the Policy, whichever it deemed appropriate at that time." [ECF No. 54 at 15]. Therefore, SBM's argument is unavailing.

### b. The vacancy exclusion applies.

SBM second sub-argument argues that the vacancy/unoccupied exclusion is now irrelevant "because the pre-requisite condition required for the exclusion to apply does not exist in this case." [ECF No. 48 at 8]. The loss here would still have occurred even if the property was vacant or unoccupied. [*Id.*]. "Indeed, the loss occurred because people went into the Property and caused it. As such, the vacant or unoccupied provision does not apply, and Plaintiff is entitled to coverage." [*Id.*]. Sompo provides no real response. Nevertheless, this argument is speculative at best. Also, as the Court will address below, WeWork was a policyholder. This argument fails to persuade the Court that there is no genuine issue of material fact on this issue.

### c. SBM's estoppel claim is meritless.

SBM also contends that Sompo would be estopped from denying coverage "because it knew or should have known that the building would become unoccupied; yet it elected to insure the building in the face of that knowledge." [*Id.*]. It draws support from *Poland v. Phillips*, 371 So. 2d 1053, 1056 (Fla. 3d DCA 1979) that an "insurance policy may not be issued on a vacant building and then be excluded from coverage because it is a vacant building." SBM believes that the facts here are germane to *Poland* because Sompo "knew or should have known that the building would become unoccupied." [ECF No. 48 at 9]. The dispositive facts SBM draws support from is

that the insurance policy is "sophisticated," and Sompo knowing WeWork had "financial troubles." [*Id.*].

The Court finds this argument meritless, however. It is not Sompo's responsibility to monitor the state of WeWork's financial well-being. Instead, SBM needed to abide by the insurance policy and notify Sompo of the ongoing eviction and state court proceeding between SBM and WeWork. *See* [ECF No. 1-1 at 11–93]. This argument is unavailing.

### (iv.)   *SBM's Arguments Regarding the Alleged Theft of the Furnishings Fail.*

SBM's raises several arguments about the alleged theft of the furnishing. First, it argues that the property could not have been vacant because the only way a loss or theft could have occurred is by a third party accessing or occupying the property to effectuate the loss or theft. [ECF No. 48 at 9–10]. And even if the property was occupied while a theft took place, SBM's argument still fails because the acts do not conform to the "intended uses of the Insured Premises and therefore do not constitute occupancy." [*Id.*].

SBM argues that the May 15, 2021, loss was not caused by "theft." [ECF No. 48 at 10]. First, despite its "attempt[] to report" theft to the City of Miami Police Department, the police ostensibly told someone that day (it is unclear whom) that this was a "civil matter." [*Id.*]. Second SBM believes that Florida's landlord lien statute applies. [*Id.*] (quoting Fla. Stat. § 83.08). Third, WeWork cannot steal its own property. [*Id.*]. SBM puts the most weight on its third point: "WeWork cannot steal its own property." [ECF No. 48 at 10]. It connects this argument to Florida's theft statute, Fla. Stat. § 812.014, that requires an intent element to deprive another of its property. [*Id.*]. Therefore, "the removal of the property damaged Plaintiff, but it was not theft; therefore, the theft exclusion cannot apply." [*Id.*].

SBM adds that the theft exclusion should also extend to the New York Standard Mortgage Clause because "'the mortgagee's coverage will not be invalidated by a foreclosure, a change in ownership, a more hazardous use of the property, or a loss caused by the neglect of the owner, provided that the mortgagee pays any premium demanded should the owner fail to do so.'" [*Id.* at 11] (*Indep. Fire Ins. Co. v. NCNB Nat'l Bank*, 517 So. 2d 59, 63 (Fla. 1st DCA 1987)). Indeed, the First District Court of Appeal held thirty-seven years ago that a New York standard mortgage clause "create[d] a separate agreement between the insurance company and the mortgagee in which policy provisions of the insurance contract not in conflict with the mortgage clause become part of this separate contract." *Indep. Fire Ins. Co.*, 517 So. 2d at 63.

Applying that law to these facts, as SBM argues, the New York Standard Mortgage created, in part, an independent contract between the insurer and the Plaintiff, "providing slightly different rights to SBM Miami than were provided to WeWork." [ECF No. 48 at 11]. Thus, "even if the loss was caused by theft—which it was not—that theft was an 'act' of WeWork." [*Id.*].

SBM's argument fails because the "Standard Mortgage Clause protects the lender or mortgagee's interests when the property owner's act or failure to comply violates a policy obligation or prohibition." [ECF No. 54 at 15] (internal citation omitted). The policy included an exception for loss resulting from "any dishonest act, including but not limited to theft, by an insured." [ECF No. 1-1 at 11–93]. Put differently, the policy does not provide for theft by the insured. *See* [ECF No. 54 at 16]. Both Parties agree that the furnishings were taken by one of the insured, WeWork.

The undersigned agrees that it would be illogical if a policyholder could steal its joint policyholder's property and then recover from the insurer. Certainly, nothing in the "Standard Mortgage Clause create[d] separate coverage for this type of loss." [ECF No. 54 at 16]. The same

19

reasoning applies to SBM's argument that WeWork cannot steal its own property. [ECF No. 48 at 10]. Again, the policy states that the insured is excluded from coverage for "mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss." [ECF No. 1-1 at 11–93]. The photographs included in Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment depict movers putting equipment and furnishings, ostensibly WeWork's, into an Enterprise moving truck. [ECF 70-1 at 5–7].

SBM admits it "attempted to report" a loss to the City of Miami Police Department. [ECF No. 48 at 10]. Sompo denied the May 15, 2021, date of loss because the "claim for damage associated with Tenant's theft is excluded by the Loss by Theft and Theft by Insured exclusions." [ECF No. 47-4 at 5]. Hunt's affidavit also states that several items of "business personal property" were stolen. [ECF No. 54-4 ¶ 10].

Thus, after reviewing the record, SBM failed to carry its burden of showing no genuine issue of material fact that Sompo breached its policy agreement. *See* Fed. R. Civ. P. 56(a). As such, the undersigned cannot recommend that SBM's partial summary judgment motion be granted.

### C. Sompo's Motion for Summary Judgment

Sompo also moved for summary judgment. *See generally* [ECF No. 54]. It argues that the Court should grant the motion because, first, the undisputed material facts show that the property was vacant/unoccupied for sixty consecutive days before the date of loss. [ECF No. 54 at 1]. Second, the New York Standard Mortgage Clause is "void" because SBM failed to notify Sompo of a change in ownership and that the building was now a more hazardous occupancy, which prejudiced Sompo. [*Id.* at 1–2].

Sompo also filed its Statement of Additional Material Facts. [ECF No. 55]. Following SBM's Response [ECF No. 70], it is undisputed that "In May 2021, WeWork hired additional

movers to remove additional business personal property, including furniture from the Insured premises." [ECF Nos. 55 ¶ 29; 70 ¶ 29]. WeWork's representatives or members last visited the property on May 28, 2021. [ECF Nos. 55 ¶ 31; 70 ¶ 31]. "On June 25, 2021, Plaintiff filed a Complaint for Possession of Real Property and Damages against WeWork and Tenant in the Eleventh Judicial Circuit Court in and for Miami-Dade County . . . ." [ECF Nos. 55 ¶ 32 (internal citation omitted); 70 ¶ 32]. Then on August 2, 2021, SBM "sent its First Notice of Loss to Sompo for alleged damage to the Insured Premises . . . ." [ECF Nos. 55 ¶ 35; 70 ¶ 35]. The Parties agree that SBM notified Sompo of a change in ownership and occupancy. [ECF Nos. 55 ¶ 36 (quotation marks omitted; 70 ¶ 36]. The Parties agree that SBM "also confirmed that, at the time of the Notice, the Insured Premises was 'secured' and 'vacant.'" [ECF Nos. 55 ¶ 37; 70 ¶ 37].

(i)     *Sompo Established that the Property was Vacant.*

For the reasons already discussed, *see supra* pp. 9–18, the Court finds no genuine dispute of material fact that the property was vacant. Sompo argues SBM "made several affirmative statements" that the property was vacant—like advising the state court "that the Insured Premises was vacant for at least one year prior to the date of loss and that in April 2020, [and] Tenant abandoned the lease and vacated the premises." [ECF No. 54 at 7]. SBM confirmed that "'[i]n or about April 2020, Tenant vacated and abandoned the Insured Premises, and that the [Insured Premises] sat empty since that time.'" [*Id.*]. It then filed the Notice of Loss, stating WeWork "left the property" and that it was now "secured and currently vacant." [*Id.*] (internal citation omitted). Sompo lastly highlights that WeWork began removing the property's IT infrastructure, and the property manager placed a padlock on the entrance door. [*Id.* at 8, 10].

SBM rejects Sompo's argument because Sompo contradicted itself when it admitted that WeWork hired movers on or about May 2021. [*Id.*] (citing [ECF No. 55 ¶ 6]. Sompo then admitted

that on or about May 2021, Dataknox removed technological equipment from the property. [ECF No. 74 at 3] (citing [ECF No. 55 ¶ 19]). Therefore, if the property were vacant 60 days prior to May 15, 2021, WeWork would not have been hiring movers to remove the business property, furniture, cameras, speakers, and keycard readers from the Property." [ECF No. 74 at 3].

These facts do not persuade the Court to change its position. Vacant, as an adjective and in the insurance context, means "empty; unoccupied." *Vacant*, *Black's Law Dictionary* (10th ed. 2014). As a noun, vacant is "[t]he quality, state, or condition of being unoccupied, esp. in reference to an office . . . ." *Id.* Sompo carried its burden to show no genuine issue of material fact that the property was vacant or unoccupied for sixty consecutive days. *See* Fed. R. Civ. P. 56(a). Summary Judgment should be granted on this part.

(ii) *The Undisputed Facts Show that SBM Failed to Timely Notify Sompo of a Change in Ownership and the Change to a More Hazardous Occupancy.*

Sompo argues it is undisputed that SBM failed to comply with the Standard Mortgage Clause requirements of (1) notifying Sompo of the change in ownership from SBAR to SBM and (2) notifying Sompo that the property was vacant and now created a more hazardous occupancy. [ECF No. 54 at 13] (citing [ECF No. 1-1 at 11–93]). The failure to notify resulted in prejudice to Sompo because it denied it "the opportunity to determine whether an additional premium is due and payable to continue coverage . . . ." [ECF No. 54 at 13] (quoting *Indep. Fire Ins. Co.*, 517 So. 2d at 64). Sompo believes that a lender may be precluded from recovery under a standard mortgage clause where:

> (1) a described "change" or "increase in hazard" falling within the meaning of the policy has occurred; (2) that such change or increase was so substantial that the risk insured by the insurer materially increased; (3) that such change occurred after the effective date of the insurance; and (4) that the mortgagee's violation of the notice requirement caused the insurer's failure to cancel the policy or demand an additional premium.

[ECF No. 54 at 13] (citing *Smith v. Peninsular Ins. Co.*, 181 So.2d 212 (Fla. 1st DCA 1966)).

The Court concludes that Sompo is correct. Therefore, Sompo carried its burden and established no genuine dispute of material fact that SBM failed to follow the requirement provided in the New York Standard Mortgage. *See* Fed. R. Civ. P. 56(a). Summary Judgment should be granted on this part.

(iii)   *Theft by an Insured is Not a Covered Loss.*

Lastly, Sompo states there is no genuine issue of material fact on whether theft is a covered loss. [ECF No. 54 at 15]. First, Sompo directs the Court to its policy, which explicitly "excludes coverage for loss that result from 'any dishonest act, including but not limited to theft, by an insured.'" [*Id.* at 16]. Second, The Standard Mortgage Clause also does not create "separate coverage" for theft. [*Id.*]. Sompo claims that "theft, removal, or 'mysterious disappearance' of the business personal property were acts of the Insureds and therefore are all excluded causes of loss under the Policy." [*Id.*].

As the Undersigned as already found, SBM failed to establish any genuine issue of material fact regarding whether this theft is covered by the Standard Mortgage Clause. The undisputed facts establish that SBM and WeWork were joint-policy holders and that WeWork took the furnishings that SBM now complains of. *See* [ECF Nos. 47 ¶ 13; 55 ¶ 13].

Sompo carried its burden to establish no genuine issue of material fact that a theft by the insured occurred that excludes SBM from coverage. *See* Fed. R. Civ. P. 56(a). Summary judgment should be granted.

## IV.   <u>CONCLUSION</u>

Based on the reasoning above, it is **RECOMMENDED** that Security Building Miami, LLC's Motion for Partial Summary Judgment [ECF No. 48] be **DENIED**. It is further

**RECOMMENDED** that Sompo America Insurance Company's Motion for Summary Judgment [ECF No. 54] be **GRANTED**.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 16th day of September 2024.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **U.S. District Judge Kathleen M. Williams**; **and
All Counsel of Record**